ACCEPTED
05-17-00879-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
3/26/2018 4:31 PM
LISA MATZ
CLERK



CITY OF DALLAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS

3/26/2018 4:31:57 PM

LISA MATZ
Clerk

March 26, 2018

Ms. Lisa Matz, Clerk
Court of Appeals
Fifth District of Texas at Dallas
George L. Allen, Sr. Courts Building
600 Commerce Street, 2nd Floor, Suite 200
Dallas, Texas 75202-4653

> **Re:** **No. 05-17-00879-CV**
> ***Hinga Mbogo et al. v. City of Dallas et al.***

Dear Ms. Matz:

This letter is to provide a copy of provisions of the Dallas City Code that I will be discussing in oral argument. This case is set for oral argument tomorrow, March 27, 2018 at 2 p.m.

Please forward a copy to the panel consisting of Justice Bridge, Justice Myers and Justice Schenck.

Sincerely,

s/Amy I. Messer

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2018, a copy of the foregoing document was served in accordance with Rule 9.5 of the Texas Rules of Appellate Procedure (1) through an electronic filing manager (EFM) upon each person listed below if the email address is on file with the EFM or (2) by email (if the address is available) and first-class mail upon each person below who does not have an email on file with the EFM:

Arif Panju
Institute for Justice
816 Congress Ave., Suite 960
Austin, Texas 78701
Email: apanju@ij.org

Robert Gall
Institute for Justice
816 Congress Ave., Suite 960
Austin, Texas 78701
Email: bgall@ij.org

William R. Maurer
Institute for Justice
816 Congress Ave., Suite 960
Austin, Texas 78701
Email: wmaurer@ij.org

Warren Norred
Norred Law, PLLC
200 E. Abram Street, Suite 300
Arlington, Texas 76010
Email: wnorred@norredlaw.com

Ari Bargil
Institute for Justice
2 South Biscayne Blvd., Suite 3180
Miami, Florida 33131
Email: abargil@ij.org

ATTORNEYS FOR APPELLANTS, HINGA MBOGO *et al.*

s/Amy I. Messer
Attorney for City of Dallas

## SEC. 51A-4.704.   NONCONFORMING USES AND STRUCTURES.

(a)   Compliance regulations for nonconforming uses.  It is the declared purpose of this subsection that nonconforming uses be eliminated and be required to comply with the regulations of the Dallas Development Code, having due regard for the property rights of the persons affected, the public welfare, and the character of the surrounding area.

(1)   Amortization of nonconforming uses.

(A)   Request to establish compliance date.  The city council may request that the board of adjustment consider establishing a compliance date for a nonconforming use.  In addition, any person who resides or owns real property in the city may request that the board consider establishing a compliance date for a nonconforming use.  Upon receiving such a request, the board shall hold a public hearing to determine whether continued operation of the nonconforming use will have an adverse effect on nearby properties. If, based on the evidence presented at the public hearing, the board determines that continued operation of the use will have an adverse effect on nearby properties, it shall proceed to establish a compliance date for the nonconforming use; otherwise, it shall not.

(B)   Factors to be considered.  The board shall consider the following factors when determining whether continued operation of the nonconforming use will have an adverse effect on nearby properties:

(i)   The character of the surrounding neighborhood.

(ii)   The  degree  of incompatibility of the use with the zoning district in which it is located.

(iii)   The manner in which the use is being conducted.

(iv)   The hours of operation of the use.

(v)   The extent to which continued operation of the use may threaten public health or safety.

(vi)   The environmental impacts of the use's operation, including but not limited to the impacts of noise, glare, dust, and odor.

(vii)   The extent to which public disturbances may be created or perpetuated by continued operation of the use.

(viii)   The extent to which traffic or parking problems may be created or perpetuated by continued operation of the use.

(ix)   Any other factors relevant to the issue of whether continued operation of the use will adversely affect nearby properties.

(C)   Finality of decision.   A decision by the board to grant a request to establish a compliance date is not a final decision and cannot be immediately appealed.  A decision by the board to deny a request to establish a compliance date is final unless appealed to state court within 10 days in accordance with Chapter 211 of the Local Government Code.

(D)   Determination of amortization period.

(i)   If the board determines that continued operation of the nonconforming use will have an adverse effect on nearby properties, it shall, in accordance with the law, provide a compliance date for the nonconforming use under a plan whereby the owner's actual investment in the use before the time that the use became nonconforming can be amortized within a definite time period.

(ii)   The following factors must be considered by the board in determining a reasonable amortization period:

(aa)   The owner's capital investment in structures, fixed equipment, and other assets (excluding inventory and other assets that may be feasibly transferred to another site) on the property before the time the use became nonconforming.

(bb)   Any costs that are directly attributable to the establishment of a compliance date, including demolition expenses, relocation expenses, termination of leases, and discharge of mortgages.

(cc)   Any return on investment since inception of the use, including net income and depreciation.

(dd)   The anticipated annual recovery of investment, including net income and depreciation.

(E)   Compliance requirement.  If the board establishes a compliance date for a nonconforming use, the use must cease operations on that date and it may not operate thereafter unless it becomes a conforming use.

(F)   For purposes of this paragraph, "owner" means the owner of the nonconforming use at the time of the board's

determination of a compliance date for the nonconforming use.

(2)   The right to operate a nonconforming use ceases if the nonconforming use is discontinued for six months or more. The board may grant a special exception to this provision only if the owner can show that there was a clear intent not to abandon the use even though the use was discontinued for six months or more.

(3)   Reserved.

(4)   The right to operate a nonconforming use ceases when the use becomes a conforming use. The issuance of an SUP does not confer any nonconforming rights. No use authorized by the issuance of an SUP may operate after the SUP expires.

(5)   The right to operate a nonconforming use ceases when the structure housing the use is destroyed by the intentional act of the owner or his agent. If a structure housing a nonconforming use is damaged or destroyed other than by the intentional act of the owner or his agent, a person may restore or reconstruct the structure without board approval. The structure must be restored or reconstructed so as to have the same approximate height, floor area, and location that it had immediately prior to the damage or destruction. A restoration or reconstruction in violation of this paragraph immediately terminates the right to operate the nonconforming use.

(6)   The nonconformity of a use as to parking, loading, or an "additional provision" (except for a requirement that a use be located a minimum distance from a structure, use, or zoning district) in Division 51A-4.200 does not render that use subject to the regulations in this subsection.

(b)   <u>Changes to nonconforming uses</u>.

(1)   <u>Changing from one nonconforming use to another</u>. The board may allow a change from one nonconforming use to another nonconforming use when, in the opinion of the board, the change is to a new use that:

(A)   does not prolong the life of the nonconforming use;

(B)   would have been permitted under the zoning regulations that existed when the current use was originally established by right;

(C)   is similar in nature to the current use; and

(D)   will not have an adverse effect on the surrounding area.

(2)   <u>Remodeling a structure housing a nonconforming use</u>. A person may renovate, remodel, or repair a structure housing a nonconforming use if the work does not enlarge the nonconforming use.  A person may renovate, remodel, or repair a structure housing a nonconforming tower/antenna for cellular communication use if the modification does not substantially change the physical dimensions of the structure housing the nonconforming tower/antenna for cellular communication use.  A modification substantially changes the physical dimensions if it meets the criteria listed in 47 C.F.R. §1.40001(b)(7), as amended.

(3)   <u>Accessory structure for a nonconforming residential use</u>. An accessory structure for a nonconforming residential use may be constructed, enlarged, or remodeled in accordance with the requirements of Sections 51A-4.209(b)(6)(E)(vii) and 51A-4.217(a) without board approval.

(4)   <u>Nonconformity as to parking or loading</u>.

(A)   <u>Increased requirements</u>. A person shall not change a use that is nonconforming as to parking or loading to another use requiring more off-street parking or loading unless the additional required off-street parking and loading spaces are provided.

(B)   <u>Delta theory</u>. In calculating required off-street parking or loading, the number of nonconforming parking or loading spaces for a use may be carried forward when the use is converted or expanded. Nonconforming rights as to parking or loading are defined in the following manner:

Required parking or loading for existing use

-   <u>Number of existing parking or loading spaces for existing use</u>

Nonconforming rights as to parking or loading.

(C)   <u>Decreased requirements</u>. When a use is converted to a new use having a lesser parking or loading requirement, the rights to any portion of the nonconforming parking or loading that are not needed to meet the new requirements are lost.

(5)   <u>Enlargement of a nonconforming use</u>.

(A)   In this subsection, enlargement of a nonconforming use means any enlargement of the physical aspects of a nonconforming use, including any increase in height, floor area, number of dwelling units, or the area in which the nonconforming use operates.

(B)   The board may allow the enlargement of a nonconforming use when, in the opinion of the board, the enlargement:

(i)   does not prolong the life of the nonconforming use;

(ii)   would have been permitted under the zoning regulations that existed when the nonconforming use was originally established by right; and

(iii)   will not have an adverse effect on the surrounding area.

(C)   Structures housing a nonconforming single family or duplex use may be enlarged without board approval.

(D)   A nonconforming tower/antenna for cellular communication use may be enlarged without board approval if the modification enlarging the nonconforming tower/antenna for cellular communication does not substantially change the physical dimensions of the nonconforming tower/ antenna for cellular communication use. A modification substantially changes the physical dimensions if it meets the criteria listed in 47 C.F.R. §1.40001(b)(7), as amended.

(c)   Nonconforming structures.

(1)   Except as provided in Subsection (c)(2), a person may renovate, remodel, repair, rebuild, or enlarge a nonconforming structure if the work does not cause the structure to become more nonconforming as to the yard, lot, and space regulations.

(2)   The right to rebuild a nonconforming structure ceases if the structure is destroyed by the intentional act of the owner or the owner's agent.

(3)   A person may, without board approval, cause a structure to become nonconforming as to the yard, lot, and space regulations by converting the use of the structure, except that no person may convert its use to a residential use or to one of the nonresidential uses listed below:

-- Airport or landing field.

-- Animal production.

-- Commercial amusement (inside).

-- Commercial amusement (outside).

-- Country club with private membership.

-- Crop production.

-- Drive-in theater.

-- Dry cleaning or laundry store.

-- General merchandise or food store 3,500 square feet or less.

-- General merchandise or food store greater than 3,500 square feet.

-- Helicopter base.

-- Heliport.

-- Helistop.

-- Nursery, garden shop, or plant sales.

-- Personal service use.

-- Private recreation center, club, or area.

-- Public park, playground, or golf course.

-- Restaurant without drive-in or drive-through service.

-- Restaurant with drive-in or drive-through service.

-- Sand, gravel, or earth sales and storage.

-- Sanitary landfill.

-- STOL (short takeoff or landing) port.

-- Stone, sand, or gravel mining.

-- Temporary construction or sales office.

-- Theater.

-- Transit passenger shelter.

The board may grant a special exception to this provision if the board finds that the conversion would not adversely affect the surrounding properties.

(4)   A person may renovate, remodel, repair, rebuild, or enlarge that portion of a nonconforming structure supporting a tower/antenna for cellular communication without board approval if the modification does not substantially change the physical dimensions of the tower or base station.  A modification substantially changes the physical dimensions if it meets the criteria listed in 47 C.F.R. §1.40001(b)(7), as amended.  (Ord. Nos. 19455; 19786; 20307; 20412; 21553; 22412; 25092; 26511; 29984)